

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00073-CV

## IN RE: GRAYBAR ELECTRIC COMPANY, INC.

## On Petition for Writ of Mandamus

## NUMBER 13-08-00294-CV

GRAYBAR ELECTRIC
COMPANY, INC.,                                                    Appellant,

v.

ALVARO GONZALEZ, ET AL.,                                         Appellees.

## On appeal from the 93rd District Court of Hidalgo County, Texas.

## NUMBER 13-08-00333-CV

## IN RE: GRAYBAR ELECTRIC COMPANY, INC.,
## MIRA ENTERPRISES, INC., AND
## MARK STALLINGS, INC.

**NUMBER 13-08-00341-CV**

**GRAYBAR ELECTRIC
COMPANY, INC.,**                                                                                    **Appellant,**

**v.**

**LAREDO HIX, L.P. AND
ALVARO GONZALEZ,**                                                                              **Appellees.**

**On appeal from the 93rd District Court of Hidalgo County, Texas.**

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant/relator, Graybar Electric Company ("Graybar"), alleges that the trial court abused its discretion in denying its motion to partially dissolve or modify an injunction granted in favor of appellees/real parties in interest, Alvaro Gonzalez and Laredo Hix, L.P. ("Laredo Hix"). By two issues in its first interlocutory appeal, cause number 13-08-00294-CV,[1] Graybar contends that the trial court abused its discretion in denying its motion because: (1) the trial court did not have jurisdiction under the Texas Property Code, *see* TEX. PROP. CODE ANN. § 53.157(2) (Vernon 2007); and (2) the trial court did not have subject matter jurisdiction to issue a temporary injunction pursuant to section 65.023 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023 (Vernon

---

[1] This interlocutory appeal is accelerated. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon 2008); TEX. R. APP. P. 28.1.

1997).[2]  In addition, Graybar petitions this Court for a writ of mandamus, in cause number 13-08-00073-CV, directing the Hidalgo County district court to set aside its order denying Graybar's motion to abate, by which the court effectively asserts dominant jurisdiction.

By six issues, reorganized as four, Graybar alleges in its second interlocutory appeal, cause number 13-08-00341-CV, that the trial court abused its discretion in granting Laredo Hix's motion to extend the original temporary injunction.[3]  Graybar, MIRA Enterprises, Inc. ("MIRA"), and Mark Stallings Electric, Inc. ("Stallings") also petition this Court for a writ of mandamus, in cause number 13-08-00333-CV, directing the Hidalgo County district court to transfer the entire case to Webb County.  We affirm the trial court's judgment in cause number 13-08-00294-CV; we deny Graybar's petition for writ of mandamus in cause number 13-08-00073-CV; we dismiss Graybar's appeal in cause number 13-08-00341-CV; and we deny Graybar's second petition for writ of mandamus in cause number 13-08-00333-CV.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case centers on the management and construction of a Holiday Inn Express & Suites Hotel in Laredo, Texas.  On January 18, 2007, HMC Hospitality Operating Company ("HMC") filed suit against Gonzalez in Collin County, asserting claims for breach of contract, declaratory judgment, quantum meruit, and attorney's fees with respect to alleged breaches of various hotel management agreements between HMC and Gonzalez

---

[2] On appeal, Graybar raises a third issue pertaining to dominant jurisdiction.  However, Graybar raised its dominant jurisdiction issue with the Hidalgo County district court in its plea in abatement.  In its first petition for writ of mandamus, Graybar takes issue with the propriety of the Hidalgo County district court's denial of its plea in abatement.  Therefore, we will address Graybar's dominant jurisdiction issue in our analysis of its entitlement to a writ of mandamus in cause number 13-08-00073-CV.

[3] On June 12, 2008, Graybar filed a motion for leave with this Court to re-file its notice of appeal in cause number 13-08-00294-CV and to file its notice of appeal in cause number 13-08-00341-CV.  In conjunction with issuing this memorandum opinion, we GRANT Graybar's motion for leave.

pertaining to the Laredo Holiday Inn. The district court in Collin County transferred the case to Hidalgo County on April 4, 2007, in response to a motion to transfer venue filed by Gonzalez.

On May 23, 2007, Graybar[4] perfected a mechanic's lien against the Laredo Holiday Inn and its owner, Laredo Hix, by filing its lien in the public records of Webb County. Graybar sought repayment for materials provided in the construction of the Laredo Holiday Inn in the amount of $37,788.55.

On June 22, 2007, Gonzalez filed an amended answer and counterclaim in the Hidalgo County district court denying the allegations made by HMC, asserting various affirmative defenses, and stating a counterclaim for fraud. Subsequently, Gonzalez filed an application for a temporary restraining order and motions for temporary and permanent injunctive relief in the Hidalgo County district court, seeking to enjoin HMC from communicating with or litigating against Gonzalez.

On July 20, 2007, The Gonzalez-DLS Family Limited Partnership and Brownsville SB, L.P. filed an original petition in intervention in the Hidalgo County suit against HMC seeking declaratory relief, damages for breach of contract and fraud, exemplary damages, and attorney's fees pertaining to alleged material misrepresentations made by HMC to induce Gonzalez to enter into various hotel management agreements for four separate hotels in Pharr, McAllen, Brownsville, and Laredo. In addition, Ascension Hospitality Management, L.L.C. filed a petition in intervention to join in Hidalgo County suit. Furthermore, all parties joined in Gonzalez's application for temporary injunction.

On August 6, 2007, the Hidalgo County district court granted Gonzalez's application for temporary injunction. In its order, the court restrained HMC "from continuing to harass,

[4] Graybar was the supplier of electrical materials to the construction project.

4

threaten or communicate with the Gonzalez Group and the Gonzalez Group's employees, agents, or representatives . . . ." The court also restrained HMC "from filing, initiating, serving any process and from continuing any litigation against the Gonzalez Group and the Gonzalez Group's employees, agents[,] and representatives . . . ." On August 23, 2007, HMC filed notice of its accelerated interlocutory appeal which was assigned cause number 13-07-00518-CV.[5]

On September 24, 2007, Graybar filed an original petition in Webb County against Stallings, MIRA, and Laredo Hix seeking to foreclose on the lien it filed on May 23, 2007, asserting that the defendants had failed to timely pay balances due for materials furnished for the construction of the Laredo Holiday Inn.[6] In its petition, Graybar contended that it was owed $37,788.55 for materials provided.

On October 9, 2007, Laredo Hix filed an original petition in intervention with the Hidalgo County district court. In its petition, Laredo Hix named sixteen parties as counter-defendants. Among the many counter-defendants were HMC, MIRA, Graybar, and Stallings. Laredo Hix claimed that HMC was in breach of contract, was negligent, and had breached a fiduciary duty owed to it. Additionally, Laredo Hix contended that Graybar, MIRA, and Stallings were in breach of contract and had negligently carried out their duties in the construction of the Laredo Holiday Inn. Laredo Hix also filed an application for a temporary restraining order and requests for temporary and permanent injunctions to prevent Graybar from pursuing its suit in Webb County until the Hidalgo County suit was

---

[5] On February 26, 2008, HMC Hospitality Operating Company ("HMC") filed an unopposed motion to dismiss its appeal against Gonzalez. In this motion, HMC notified this Court that the parties in the original appeal had successfully mediated their claims and that it sought to dismiss its appeal and that each party would pay its own costs. This Court subsequently granted HMC's motion to dismiss in cause number 13-07-00518-CV on May 13, 2008.

[6] The record reflects that MIRA was the general contractor and Stallings was an electrical subcontractor.

5

resolved. Also on October 9, 2007, Gonzalez filed a supplemental counterclaim, an application for temporary restraining order, and requests for temporary and permanent injunctions against Graybar which were virtually identical to those filed by Laredo Hix.[7]

On November 2, 2007, the Hidalgo County district court granted the requests for temporary injunction made by Gonzalez and Laredo Hix. The court specifically restrained Graybar from (1) "continuing to harass, threaten or communicate with Laredo Hix, L.P. and/or Alvaro Gonzalez, and their employees, agents, or representatives," and (2) "filing, initiating, serving any process, and from continuing any litigation either criminal or civil against Laredo Hix, L.P., and/or Alvaro Gonzalez, and their employees, agents and representatives, except in this Court." The temporary injunction, which was in part an anti-suit injunction, was to last until May 12, 2008, when the matter was set for trial.

On November 8, 2007, Graybar filed a motion to partially dissolve or modify the November 2, 2007 injunction and a verified plea in abatement with the Hidalgo County district court. In support of its motion, Graybar attached a copy of its original petition in Webb County against Stallings, MIRA, and Laredo Hix.[8] On January 2, 2008, after a hearing, the Hidalgo County district court denied Graybar's motion and plea in abatement. Graybar perfected its appeal.[9] Graybar also filed a petition for writ of mandamus on February 4, 2008, claiming that the trial court abused its discretion in denying its plea in

---

[7] The record contains an affidavit executed by Gonzalez stating that he is the president of Laredo Hix.

[8] On appeal, Laredo Hix contends that it was never served with notice of the Webb County suit filed by Graybar; therefore, it argues, the suit cannot be considered to have commenced against it.

[9] On January 18, 2008, Graybar filed notice of its accelerated interlocutory appeal of the trial court's January 2, 2008 order, in cause number 13-07-00518-CV, essentially joining in HMC's original interlocutory appeal. Realizing its error, Graybar filed an emergency expedited motion for severance on January 25, 2008. In this motion, Graybar moved this Court to sever its appeal from cause number 13-07-00518-CV and to docket its appeal under a distinct cause number. This Court granted Graybar's motion for severance and assigned its interlocutory appeal a new cause number—13-08-00294-CV.

abatement because the Webb County district court has dominant jurisdiction over all claims.

At a hearing on May 12, 2008, the Hidalgo County district court denied motions to transfer venue filed by Graybar and other interested parties—namely, Harden Plumbing Company, Inc., Pete Gallegos Paving, Inc., Stallings, and MIRA—and addressed a motion to compel. However, the court did not commence a trial on the merits at this time. Nevertheless, the November 2, 2007 temporary injunction expired. On May 20, 2008, Gonzalez and Laredo Hix filed an emergency motion to extend the November 2, 2007 temporary injunction until November 10, 2008, when the matter was scheduled for a trial on the merits in Hidalgo County. The Hidalgo County district court granted the extension, noting that "[a]ll findings set forth in this Court's Temporary Injunction Order dated November 2, 2007 are incorporated by reference as if set forth fully herein." No other changes were made to the temporary injunction.

Graybar, MIRA, and Stallings filed a joint petition for writ of mandamus in cause number 13-08-00333-CV on May 27, 2008, asserting that the venue provisions of the civil practice and remedies code mandate venue in Webb County. *See id.* §§ 15.011, 15.012 (Vernon 2002). In conjunction with its motion for leave of court, which we granted earlier, Graybar filed its notice of appeal in cause number 13-08-00341-CV on June 12, 2008.

## II. CAUSE NUMBER 13-08-00294-CV

### A. Appellate Jurisdiction

Section 51.014(a)(4) of the civil practice and remedies code provides this Court with interlocutory appellate jurisdiction if the district court "grants or refuses a temporary injunction or grants or overrules a motion to dissolve a temporary injunction . . . ." *Id.* § 51.014(a)(4) (Vernon 2008). Here, the trial court denied Graybar's motion to dissolve or

7

modify an injunction. Therefore, we have jurisdiction over Graybar's interlocutory appeal. *See id.*

**B. Standard of Review**

Whether to dissolve a temporary injunction is a matter lying within the trial court's discretion. *Cellular Mktg., Inc. v. Houston Cellular Tel. Co.*, 784 S.W.2d 734, 735 (Tex. App.–Houston [14th Dist.] 1990, no writ); *Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 834 (Tex. App.–Austin 1984, no writ). On appeal, our review is limited to the question of whether the trial court abused its discretion in denying Graybar's motion to dissolve. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

The trial court may modify a temporary injunction because of fundamental error or changed circumstances, but it has no duty to reconsider the grant of a temporary injunction if the movant fails to present new evidence showing fundamental error or changed circumstances. *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.–Austin 2000, no pet.) (citing *Henke v. Peoples State Bank*, 6 S.W.3d 717, 721 (Tex. App.–Corpus Christi 1999, pet. dism'd w.o.j.)). Fundamental error exists when "the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982). On the other hand, changed circumstances "are conditions that altered the status quo existing after the temporary injunction was granted or that made the temporary injunction unnecessary or improper." *Henke*, 6 S.W.3d at 721.

8

**C. Discussion**

**1. Graybar's Mechanic's Lien in Webb County**

In its first issue, Graybar asserts that the Hidalgo County district court did not have jurisdiction over its Webb County claims pursuant to section 53.157 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 53.157(2). Specifically, Graybar contends that Webb County is the only county in which its foreclosure suit can be brought and maintained because that is where the property is located. On the other hand, Gonzalez and Laredo Hix argue that section 53.157 of the property code relates to venue of a mechanic's lien foreclosure suit and not to subject matter jurisdiction. They further argue that the injunction issued by the Hidalgo County district court does not require that Graybar pursue its mechanic's lien foreclosure suit in Hidalgo County.

Section 53.157 of the property code provides, in relevant part: "A mechanic's lien or affidavit claiming a mechanic's lien filed under Section 53.052 *may* be discharged of record by . . . failing to institute suit to foreclose the lien in the county in which the property is located . . . ." *Id.* § 53.157(2) (emphasis added).[10] Moreover, section 53.154 states that "[a] mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien." *Id.* § 53.154 (Vernon 2007).

It is undisputed that Graybar perfected its mechanic's lien by filing an affidavit in the

---

[10] Section 53.157 of the property code allows for the discharge of Graybar's mechanic's lien by five other methods besides failure to institute a foreclosure suit in the county in which the property is located. *See* TEX. PROP. CODE ANN. § 53.157 (Vernon 2007). In any event, Graybar has already filed suit to foreclose its mechanic's lien in Webb County. *See id.* § 53.158 (Vernon 2007) (providing that "suit must be brought to foreclose the lien within two years after the last day a claimant may file the lien affidavit under Section 53.052 or within one year after completion, termination, or abandonment of the work under the original contract under which the lien is claimed, whichever is later"); *id.* § 53.052 (Vernon 2007) (providing that "the person claiming the lien must file an affidavit with the county clerk of the county in which the property is located . . . not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues").

Webb County public records. The thrust of Graybar's argument pertaining to its mechanic's lien is that the Hidalgo County district court's issuance of the anti-suit injunction essentially forbids Graybar from foreclosing on its lien because the property code prevents it from instituting a foreclosure suit in Hidalgo County. We disagree.

The part of the Hidalgo County district court's November 2, 2007 temporary injunction, which is, in effect, an anti-suit injunction, provides, in relevant part:

> IT IS FURTHER ORDERED, that Counter-Defendants JUAN A. CASTILLO, GRAYBAR ELECTRIC COMPANY, INC., GILBERT J. GUERRERO D/B/A RIO DELTA ENGINEERING, PETE GALLEGOS PAVING, INC., SOLORIO & ASSOCIATES, MARK STALLINGS ELECTRIC, INC., and their agents, representatives, attorneys and those acting in concert therewith, are hereby immediately restrained from filing, initiating, serving any process, and from continuing any litigation either criminal or civil against the Laredo HIX, LP and/or Alvaro Gonzalez, and their employees, agents and representatives, except in this Court.

> IT IS FURTHER ORDERED that this Temporary Injunction shall be valid for the remainder of this litigation until a final trial on the merits shall take place at 9 a.m., May 12, 2008.

We do not find and Graybar has not directed us to, anything in the record demonstrating that the Hidalgo County district court affirmatively asserted jurisdiction over Graybar's suit pertaining to its mechanic's lien. The effect of the anti-suit injunction was merely to abate Graybar's foreclosure suit until a trial on the merits occurred in the Hidalgo County lawsuit.[11] *See Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996). We disagree with Graybar's contention that it has been "stripped of its right to bring suit to foreclose its lien." Graybar has commenced its foreclosure suit in Webb County, and based on the record before us, there is nothing preventing Graybar from prosecuting its foreclosure suit after the Hidalgo County suit is resolved. Graybar has not provided any citations to authority supporting its argument that the resolution of the Hidalgo County

---

[11] Gonzalez and Laredo Hix concede this fact on appeal.

10

lawsuit would eliminate its ability to ultimately foreclose on its mechanic's lien or that the court's injunction required Graybar to foreclose on its mechanic's lien in Hidalgo County. *See* TEX. R. APP. P. 38.1(h). Moreover, Graybar has not raised any issues pertaining to changed circumstances. *See Universal Health Servs., Inc.*, 24 S.W.3d at 580; *Henke*, 6 S.W.3d at 721. Therefore, we do not find any fundamental error in the Hidalgo County district court's actions necessitating a modification or dissolution of the temporary injunction issued. Accordingly, we overrule Graybar's first issue.

### 2. Section 65.023 of the Texas Civil Practice and Remedies Code

By its second issue, Graybar asserts that the trial court did not have subject matter jurisdiction to issue the anti-suit injunction pursuant to section 65.023 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023. Specifically, Graybar argues that section 65.023 requires that any injunction must be filed in Webb County. *See id.* Conversely, Gonzalez and Laredo Hix contend that section 65.023 of the civil practice and remedies code is not applicable because the Hidalgo County lawsuit is not purely injunctive in nature. *See id.*

The principle of comity requires that courts exercise the power to enjoin foreign suits "sparingly, and only in very special circumstances." *Harper*, 925 S.W.2d at 651. An anti-suit injunction may be justified when the injunction will prevent a multiplicity of suits or will protect a party from vexatious or harassing litigation. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *see Gannon*, 706 S.W.2d at 307; *see also Harper*, 925 S.W.2d at 651 (holding that an anti-suit injunction is appropriate: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation). The issuance of an anti-suit injunction is within the sound discretion of the trial court.

11

*London Mkt. Insurers v. Am. Home Assurance Co.*, 95 S.W.3d 702, 705-06 (Tex. App.–Corpus Christi 2003, no pet.).

Graybar's second issue hinges upon the interpretation of section 65.023 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023. Specifically, section 65.023, entitled "Place for Trial," provides:

> (a) Except as provided by Subsection (b), a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled. If the writ is granted against more than one party, it may be tried in the proper court of the county in which either party is domiciled.

> (b) A writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered.

*Id.*

Graybar contends that the Hidalgo County district court was powerless to enjoin the Webb County suit because section 65.023 mandates that a writ of injunction had to be filed in Webb County. *See id.* We disagree.

The Texas Supreme Court, in *In re Continental Airlines*, interpreted section 65.023 of the civil practice and remedies code, the injunction venue statute. 988 S.W.2d 733 (Tex. 1998) (orig. proceeding); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023. The supreme court noted that "the injunction *venue* statute applies only to suits in which the relief sought is purely or primarily injunctive." *In re Continental Airlines*, 988 S.W.2d at 736 (emphasis added) (citing *Ex parte Coffee*, 160 Tex. 224, 328 S.W.2d 283, 287 (Tex. 1959) (holding that the statute now codified as section 65.023 of the civil practice and remedies code "only applies to and governs the issuance and return of writs and trial in cases in which the relief sought is purely or primarily injunctive.")); *see also In re Daniel*, No. 12-06-00232-CV, 2006 Tex. App. LEXIS 7207, at *7 (Tex. App.–Tyler Aug. 16, 2006, orig.

12

proceeding) (suggesting that if the petition includes both a plea for declaratory judgment and an injunction without any additional causes of action, then the primary purpose of the suit is injunctive in nature). Furthermore, this Court has held in similar circumstances that when "[t]he injunction granted by the court below was ancillary in nature," former article 4656 does not apply.[12] *Ray v. Paulus*, 489 S.W.2d 446, 449-50 (Tex. Civ. App.–Corpus Christi 1972, no writ).

This case is not purely injunctive in nature. In fact, the Hidalgo County district court merely issued the injunction as a means to prevent a multiplicity of suits and vexatious or harassing litigation. *See id.* at 450; *see also Harper*, 925 S.W.2d at 651. In applying Graybar's logic, no trial court would be able to obtain subject matter jurisdiction to enjoin another court from litigating a matter unless the enjoined court agreed to be enjoined. This contention is not supported by case law on anti-suit injunctions. *See Harper*, 925 S.W.2d at 651; *Christensen*, 719 S.W.2d at 163; *Gannon*, 706 S.W.2d at 305.

In support of its contention that section 65.023 prevented the Hidalgo County district court from enjoining the Webb County lawsuit, Graybar relies heavily on this Court's holding in *Butron v. Cantu*, 960 S.W.2d 91, 94-95 (Tex. App.–Corpus Christi 1997, no writ). However, we find the *Butron* decision to be factually distinguishable from this case.

In *Butron*, a district court in Cameron County rendered a judgment against an attorney for legal malpractice. *Id.* at 93. In response to this judgment, the attorney filed an action in Hidalgo County to declare the Cameron County judgment void and later sought a temporary injunction to prevent collection on a supersedeas bond posted with the

---

[12] Section 65.023 of the Texas Civil Practice and Remedies Code is the successor to both former article 4656 of the Texas Revised Civil Statutes and article 4653 of the "Revised Civil Statutes of Texas 1911." *Hughes v. Morgan*, 816 S.W.2d 557, 559 (Tex. App.–Fort Worth 1991, writ denied); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023 (Vernon 2008).

Cameron County district court. *Id.* The Hidalgo County district court subsequently issued a temporary injunction prohibiting the collection of the supersedeas bond. *Id.* The issue on appeal was the propriety of the Hidalgo County district court's grant of the attorney's request for temporary injunction. *Id.* at 94. This Court held that, since the Cameron County district court had rendered the judgment, only that court could enjoin collection on the supersedeas bond. *Id.* at 95. There, injunctive relief was the primary relief sought by the attorney in Hidalgo County to "prevent [appellant] from executing on that [Cameron County] judgment." *Id.* Moreover, this Court specifically noted that "[s]ection 65.023 is intended to ensure that comity prevails among the various Texas trial courts because 'orderly procedure and proper respect for the courts will require that . . . attacks upon their judgments should be made in the court rendering such judgment, rather than in other courts indiscriminately.'" *Id.* at 94 (quoting *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex. App.–Houston [1st Dist.] 1993, writ denied)).

We first note that Graybar has not secured a final judgment on its foreclosure suit in Webb County. Here, unlike *Butron*, the temporary injunction sought by Gonzalez and Laredo Hix in Hidalgo County was not pursued for the purpose of preventing Graybar from collecting on a final judgment.[13] However, most importantly, the relief sought in the case at bar is not primarily injunctive in nature. The temporary injunction in the present case is merely ancillary to the primary relief sought—damages associated with various causes of

---

[13] Graybar also relies on *Gardner v. Stewart*, 223 S.W.3d 436, 437 (Tex. App.–Dallas 2006, pet. denied) and *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex. App.–Houston [1st Dist.] 1993, writ denied) for the contention that section 65.023 prevented the Hidalgo County district court from issuing the temporary injunction. Specifically, Graybar argues that section 65.023 requires a party seeking to enjoin pending litigation "must do so where the litigation is pending." However, like *Butron v. Cantu*, 960 S.W.2d 91, 94 (Tex. App.–Corpus Christi 1997, no writ), the *Gardner* and *McVeigh* courts concluded that attacks on a judgment must be made in the court that rendered the judgment and that a party cannot seek to enjoin a party from enforcing a judgment issued in another district court. *See Gardner*, 223 S.W.3d at 437; *McVeigh*, 849 S.W.2d at 914. As we have previously noted, Graybar has not secured a judgment in the Webb County lawsuit. Therefore, we do not find the *Gardner* or *McVeigh* cases to be persuasive in this matter.

action, including breach of contract and breach of fiduciary duty, pertaining to the management and construction of the Laredo Holiday Inn. *See Karagounis v. Bexar County Hosp. Dist.,* 70 S.W.3d 145, 146-47 (Tex. App.–San Antonio 2001, pet. denied) (holding that because the true nature of the relief being sought was not purely injunctive but for specific performance of a contract, section 65.023 of the civil practice and remedies code did not apply). We believe this case is akin to *Ray. See* 489 S.W.2d at 449-50. Contrary to Graybar's assertions, Texas courts have routinely authorized the issuance of anti-suit injunctions to prevent a multiplicity of suits and to prevent vexatious or harassing litigation. *See Harper,* 925 S.W.2d at 651; *Christensen,* 719 S.W.2d at 163; *Gannon,* 706 S.W.2d at 305.

We therefore do not find any fundamental error in the Hidalgo County district court's issuance of the temporary injunction to maintain the status quo. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (stating that the purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits); *see also Harper,* 925 S.W.2d at 651; *Christensen,* 719 S.W.2d at 163; *Gannon,* 706 S.W.2d at 305. Accordingly, we conclude that the trial court did not abuse its discretion in issuing the anti-suit injunction and denying Graybar's motion. We overrule Graybar's second issue, and we affirm the judgment of the trial court.

### III. CAUSE NUMBER 13-08-00073-CV

In its first petition for writ of mandamus, Graybar argues that the Hidalgo County district court abused its discretion in denying its verified plea in abatement because the Webb County district court has dominant jurisdiction. Graybar also claims that Gonzalez and Laredo Hix engaged in impermissible "forum shopping." Gonzalez and Laredo Hix argue that: (1) Hidalgo County has dominant jurisdiction over the Webb County lawsuit

15

because suit was commenced there first and the claims are interrelated; (2) the Webb County lawsuit has not commenced because Laredo Hix has yet to be served; and (3) Graybar has not introduced any evidence to support an abatement of the Hidalgo County lawsuit.[14]

## A. Standard of Review

Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker*, 827 S.W.2d at 839. Mandamus is appropriate to resolve disputes over dominant jurisdiction. *Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex. 2001) (orig. proceeding) (citing *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Tex. 1974)). Moreover, mandamus relief may be granted when one court actively interferes with the jurisdiction of another court. *See In re Reliant Energy, Inc.*, 159 S.W.3d 624, 626 (Tex. 2005) (orig. proceeding).

The party bringing a plea in abatement must show: (1) the other suit (here, the Webb County lawsuit) commenced first; (2) the suit is still pending; (3) the same parties

_____

[14] Gonzalez and Laredo Hix also assert that Graybar is not entitled to a writ of mandamus because it already has an adequate remedy at law—its interlocutory appeal. As previously noted, Graybar took issue with the Hidalgo County district court's denial of its plea in abatement in its petition for writ of mandamus, not in its interlocutory appeal. Moreover, section 51.014 of the civil practice and remedies code does not grant this Court interlocutory appellate jurisdiction over a denial of a plea in abatement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014.

Appeal is ordinarily an adequate remedy to review incidental rulings such as pleas in abatement. *See Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *see also In re Ayala*, No. 13-07-140-CV, 2007 Tex. App. LEXIS 3319, at *6 (Tex. App.–Corpus Christi Apr. 27, 2007, orig. proceeding). However, the Texas Supreme Court has held that mandamus is appropriate to resolve disputes over dominant jurisdiction. *See Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex. 2001) (orig. proceeding) (citing *Curtis v. Gibbs*, 511 S.W.2d 263, 268 (Tex. 1974)). In addition, the supreme court, in *Abor v. Black*, denied mandamus relief requesting a court to abate a case in deference to another court's dominant jurisdiction absent "any order [of the former court] which actively interferes with the exercise of jurisdiction" by the court with dominant jurisdiction. 695 S.W.2d 564, 567 (Tex. 1985). The supreme court has not resolved these tests into one uniform test governing mandamus relief pertaining to dominant jurisdiction issues. Here, the Webb County district court set a hearing for December 6, 2007, to resolve an emergency plea in abatement and a motion filed by Stallings to dissolve or modify the November 2, 2007 temporary injunction. Clearly, the setting of the December 6, 2007 hearing date by the Webb County district court interferes with the exercise of jurisdiction by the Hidalgo County district court. Under either test, Graybar does not have an adequate remedy by appeal and, therefore, it properly raised this issue in its petition for writ of mandamus. *See Perry*, 66 S.W.3d at 258; *Abor*, 695 S.W.2d at 567.

are involved; and (4) the controversies are the same.  *S. County Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 468 (Tex. App.–Corpus Christi 2000, no pet.) (op. on reh'g).  The movant has the burden of proof to establish the allegations in his motion to abate.  *Flowers v. Steelcraft Corp.*, 406 S.W.2d 199, 199 (Tex. 1966); *S. County Mut. Ins. Co.*, 19 S.W.3d at 469.

We review the trial court's action in granting or denying a plea in abatement using an abuse of discretion standard.  *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988); *Davis v. Guerrero*, 64 S.W.3d 685, 691 (Tex. App.–Austin 2002, no pet.); *S. County Mut. Ins. Co.*, 19 S.W.3d at 468.  The trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

## B. The Doctrine of Dominant Jurisdiction & Venue

The dominant jurisdiction doctrine applies when venue is proper in two or more Texas counties or courts.  *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005) (noting that the concept of dominant jurisdiction is not applicable in cases where venue is not proper in more than one Texas county); *Wyatt*, 760 S.W.2d at 248.  Dominant jurisdiction recognizes "the plaintiff's privilege to choose the forum" and accepts that choice as correct, provided "the forum is a proper one."  *Gonzalez*, 159 S.W.3d at 622; *Wyatt*, 760 S.W.2d at 248; *see Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1070 (Tex. 1926) (orig. proceeding), *disapproved on other grounds by Walker*, 827 S.W.2d at 843.

"The long-standing common law rule in Texas is that the first court to acquire jurisdiction over the subject matter and the parties of a controversy has dominant jurisdiction over all other courts."  *San Miguel v. Bellows*, 35 S.W.3d 702, 704 (Tex. App.–Corpus Christi 2000, pet. denied) (citing *Cleveland*, 285 S.W. at 1070); *see Curtis*,

511 S.W.2d at 267. "Where jurisdiction of a district court has attached, it has the power to permit pleadings to be amended, new parties to be made, to determine all essential questions, and to do anything with reference thereto authorized by law." *San Miguel*, 35 S.W.3d at 704 (citing *Cleveland*, 286 S.W. at 1069). Dominant jurisdiction excludes other courts from exercising jurisdiction over the same case. *Curtis*, 511 S.W.2d at 267; *San Miguel*, 35 S.W.3d at 704.

Dominant jurisdiction requires "an inherent interrelation of the subject matter" in the two suits before a plea in abatement must be granted in the second action. *Wyatt*, 760 S.W.2d at 248. It is not required that the exact issues and all the parties be included in the first action before the second action is filed, provided that the claim in the first suit may be amended to bring in all necessary and proper parties and issues. *Id.* at 247. In determining whether an inherent interrelationship exists, courts should be guided by the rule governing persons to be joined if feasible and the compulsory counterclaim rule. *Id.*

## C. Discussion

It is undisputed that the Hidalgo County district court has general subject matter jurisdiction over all claims involved. *See* TEX. CONST. art. V, § 8 (providing that the district court has exclusive, original jurisdiction of "all actions, proceedings, and remedies," except when the constitution or other law confers jurisdiction on some other court); TEX. GOV'T CODE ANN. § 24.007 (Vernon 2000) ("The district court has the jurisdiction provided by Article V, Section 8 of the Texas Constitution."); *see also Gordon v. Jones*, 196 S.W.3d 376, 381-82 (Tex. App.–Houston [1st Dist.] 2006, no pet.). Moreover, Graybar acknowledges in its plea in abatement that the "Webb County Lawsuit is clearly inherently interrelated with the Hidalgo County Lawsuit. . . . Both have the same subject matter—the HOLIDAY INN-LAREDO." *See Wyatt*, 760 S.W.2d at 248. Therefore, the only issue

before us is which suit was filed first.

HMC filed its original petition with the Collin County district court on January 18, 2007, asserting various causes of action pertaining to an alleged breach of several hotel management agreements regarding the Laredo Holiday Inn. The lawsuit was transferred to Hidalgo County on May 21, 2007. It was not until September 24, 2007, that Graybar filed its suit in Webb County to foreclose upon its mechanic's lien. Clearly, the Hidalgo County lawsuit was filed first.

When suit is proper in more than one county, the court in which the suit is first filed acquires dominant jurisdiction. *Wyatt*, 760 S.W.2d at 248. As long as the forum is proper, it is the plaintiff's privilege to choose the forum. *Id.* "Defendants are not at liberty to decline to do battle in the forum chosen by the plaintiff." *Id.* Therefore, because the parties agree that the claims are interrelated and because the Hidalgo County lawsuit was filed first, we conclude that the Hidalgo County district court has dominant jurisdiction over the Webb County suit.[15]

Graybar, however, relies heavily on this Court's holding in *San Miguel* to support its contention that Webb County has dominant jurisdiction over the involved claims. 35 S.W.3d at 703-05. In that case, San Miguel obtained a judgment against R.D. Bellows Law Office ("Bellows") for damages of $513,000 in a Harris County district court. *Id.* at 703.

---

[15] Though Graybar did, in fact, institute its Webb County suit before Laredo Hix's plea in intervention, we must refer to the original Hidalgo County suit filed on January 18, 2007. *See Wyatt*, 760 S.W.2d at 247. This is so because Laredo Hix, through its plea in intervention, effectively amended the Hidalgo County suit to join all necessary parties, and Graybar did not challenge the joinder in the trial court. *See id.*; *see also* TEX. R. CIV. P. 39 (providing that a person subject to service of process shall be joined as a party if (1) in his absence complete relief cannot be accorded to those already made parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in its absence may "(i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest"); R. 40 (providing that defendants may be joined in one action if the assertions against them arise "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.").

After the judgment had become final, San Miguel filed an application for ancillary relief in the Harris County district court seeking a turnover order and joining Bellows's wife, Suzette, and the Bellows Law Firm, P.L.L.C. *Id.* Subsequently, Suzette and the P.L.L.C. obtained an ex parte temporary restraining order in Live Oak County to prevent San Miguel from proceeding with her collection efforts in Harris County. *Id.* at 704. Suzette and the P.L.L.C. also filed an application for temporary injunction and a petition for declaratory judgment. *Id.* This Court concluded that the Live Oak trial court abused its discretion in issuing a temporary injunction enjoining San Miguel from pursuing her collection efforts against Bellows in the Harris County trial court. *Id.* at 703, 705.

We find this case to be factually distinguishable. Unlike *San Miguel*, Graybar has not secured a final judgment in Webb County. Further, the purpose of the Hidalgo County district court's issuance of the temporary injunction and its denial of Graybar's plea in abatement was not to prevent Graybar from enforcing a final judgment. Additionally, as previously discussed, the claims involved are inherently interrelated and the Hidalgo County lawsuit was filed first; therefore, Hidalgo County has dominant jurisdiction over the claims involved. Finally, the claims asserted by Suzette and the P.L.L.C. were merely injunctive in nature whereas the claims asserted by Gonzalez and Laredo Hix in the Hidalgo County district court are not. *See In re Continental Airlines*, 988 S.W.2d at 736; *see also In re Daniel*, 2006 Tex. App. LEXIS 7207, at *7 (suggesting that if the petition includes both a plea for declaratory judgment and an injunction without any additional causes of action, then the primary purpose of the suit is injunctive in nature).

Graybar further argues that Gonzalez and Laredo Hix are engaging in impermissible "forum shopping." *See Reliant Energy, Inc.*, 102 S.W.3d at 875 ("Forum shopping is against public policy . . . ."). Graybar has not cited to any authority stating that the Hidalgo

20

County district court was required to abate the Hidalgo County lawsuit for impermissible "forum shopping." In any event, our review of the record does not yield a finding that Gonzalez and Laredo Hix engaged in impermissible "forum shopping." Gonzalez and Laredo Hix joined Graybar and several other counter-defendants in the underlying Hidalgo County lawsuit because, as Graybar admits, these claims are interrelated.

In concluding that the Hidalgo County district court has dominant jurisdiction, we do not find that Graybar's Webb County foreclosure lawsuit is extinguished; instead, it is merely abated pending the resolution of the Hidalgo County lawsuit. Therefore, based on the foregoing, we conclude that the Hidalgo County trial court did not abuse its discretion in denying Graybar's motion to abate. Accordingly, we deny Graybar's petition for writ of mandamus.

### IV. CAUSE NUMBER 13-08-00341-CV

In its second interlocutory appeal, Graybar asserts that the trial court erred in granting the motion to extend the November 2, 2007 temporary injunction filed by Gonzalez and Laredo Hix. Specifically, Graybar contends that the temporary injunction should be dissolved because: (1) it does not state the court's reason for issuing the injunction; (2) it does not describe the acts sought to be restrained; (3) the trial court did not give Graybar an opportunity to be heard, in violation of the Due Process Clause of the United States Constitution, *see* U.S. CONST. amend. XIV; and (4) the trial court did not have subject matter jurisdiction to issue the order and Webb County has dominant jurisdiction over the remaining claims.

Gonzalez and Laredo Hix argue that: (1) this Court does not have jurisdiction over this appeal; (2) Graybar's alleged procedural violations do not apply to extensions of temporary injunctions; (3) Graybar has already raised the issues of subject matter

21

jurisdiction and dominant jurisdiction in cause number 13-08-00294-CV, its first interlocutory appeal; and (4) Graybar received "all the process to which it was due."

## A. Applicable Law

An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes such an appeal. *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000). Section 51.014 of the civil practice and remedies code provides that a party may appeal from an interlocutory order of the trial court that "grants or refuses a temporary injunction." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014. Texas courts, however, have construed this provision to allow interlocutory review of an amended order making a substantive modification to a temporary injunction. *See Currie v. Int'l Telecharge, Inc.*, 722 S.W.2d 471, 472 (Tex. App.–Dallas 1986, no writ) (deciding that a temporary injunction was modified by restricting the area affected by a non-competition provision); *Toby Martin Oilfield Trucking, Inc v. Martin*, 640 S.W.2d 352, 355 (Tex. App.–Houston [1st Dist.] 1982, no writ) (finding that temporary injunction was modified by increasing the amount of the bond); *see also City of Lancaster v. Tex. Motor Transp. Ass'n, Inc.*, No. 05-05-00169-CV, 2005 Tex. App. LEXIS 7744, at *3 (Tex. App.–Dallas Sept. 22, 2005, no pet.) (mem. op.) (concluding that the appellate court did not have jurisdiction to review a temporary injunction where the sole modification was to extend the date until a trial on the merits could be conducted); *cf. Ludewig v. Houston Pipeline Co.*, 737 S.W.2d 15, 16 (Tex. App.–Corpus Christi 1987, no writ) (holding that the trial court's order amending a temporary injunction to include a new trial date is not an appealable order). We must determine whether the extension of the temporary injunction in this case amounted to a substantive modification.

22

**B. Discussion**

The trial court's order extending the November 2, 2007 temporary injunction specifically incorporated by reference the substantive findings contained in the original November 2, 2007 temporary injunction. The lone change in the trial court's order was to extend the duration of the injunction until the new trial setting of November 10, 2008. *See City of Lancaster*, 2005 Tex. App. LEXIS 7744, at *3. As in *City of Lancaster*, no substantive changes were made to the November 2, 2007 temporary injunction. *See id.*

Graybar relies heavily on the decisions in *EMC Mortgage Corp. v. Jones*, No. 05-06-00419-CV, 2008 Tex. App. LEXIS 3270, at *5 (Tex. App.–Dallas May 7, 2008, no pet.) (op. on reh'g); *Webb v. Hartman Newspapers, Inc.*, 793 S.W.2d 302, 303 (Tex. App.–Houston [14 th Dist.] 1990, no writ), and *Herider Farm Processing, Inc v. City of Nacogdoches*, 573 S.W.2d 297, 298-99 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) for the proposition that an extension is appealable because it is itself a temporary injunction. We disagree.

The *EMC Mortgage Corp*. case involved the trial court's extension of an underlying temporary injunction after a final judgment had been secured. 2008 Tex. App. LEXIS 3270, at **9-10. The Dallas Court of Appeals concluded that once a final judgment was secured, under the circumstances involved, the underlying temporary injunction terminated; therefore, the extension of the underlying temporary injunction constituted a new temporary injunction. *Id.* at *14. In this case, we do not have a final judgment; instead, Graybar challenges the temporary injunction on interlocutory appeal, for which our jurisdiction is limited. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4). Therefore, *EMC Mortgage Corp.* is not applicable.

In *Webb*, appellant Willis Webb appealed the trial court's extension of a temporary injunction ordering him to comply with provisions on a covenant not to compete with his

former employer. 793 S.W.2d at 303. The Fourteenth Court of Appeals reviewed the mertis of the temporary injunction without any discussion as to whether the trial court's extension of the temporary injunction's duration constituted a substantive modification. *Id.* at 305. Here, we have a unique situation in that we have reviewed the merits of the temporary injunction in cause number 13-08-00294-CV, Graybar's first interlocutory appeal. The only matter for review in this cause is the extension. Therefore, we find *City of Lancaster* to be more on point in this cause, and we decline to follow *Webb*.

Finally, in *Herider Farm Processing*, appellant appealed the trial court's issuance of a temporary injunction enjoining the City of Nacogdoches from terminating water and sewer services for a period of fifteen days. 573 S.W.2d at 297. After a hearing on the temporary injunction, the trial court concluded that appellant was entitled to injunctive relief and granted appellant's motion for a temporary injunction for a period of fifteen days from the date of the hearing. *Id.* at 298. Appellant subsequently filed a motion for extension of the temporary injunction "until such time as the principal suit herein may be tried to a conclusion." *Id.* The trial court denied appellant's motion. *Id.* On appeal of the temporary injunction, the court of appeals noted that the crux of the disagreement between appellant and appellee pertained to the length of time for which the trial court granted or should have granted the injunction. *Id.* The court of appeals concluded that the trial court had abused its discretion in granting the injunction for only a fifteen day period, reasoning that fifteen days is insufficient to preserve the status quo. *Id.* at 299.

The *Herider Farm Processing* case is not directly analogous to the instant case. Although it was argued that the trial court had abused its discretion in denying its motion to extend the temporary injunction, the court of appeals did not analyze the denial of the motion to extend the temporary injunction. *Id.* at 298. Instead, the court analyzed the

24

original temporary injunction that the trial court had granted. *Id.* at 298-99. In doing so, the court concluded that the duration of the original temporary injunction was insufficient to maintain the status quo of the underlying suit, especially in light of the trial court's conclusion that appellant had proven its rights to permanent injunctive relief. *Id.* at 299. Therefore, the court modified the duration of the original temporary injunction to last until a trial on the merits. *Id.* Considering the court did not address appellant's motion to extend the temporary injunction and instead addressed the trial court's grant of the original temporary injunction, we do not find this case to be persuasive in this matter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (providing for an interlocutory appeal premised on a grant or refusal to issue a temporary injunction).

Graybar further argues that the holdings in *Sweet v. Inkjet International, Ltd.*, No. 05-03-00233-CV, 2003 Tex. App. LEXIS 8539, at **6-8 (Tex. App.–Dallas Oct. 2, 2003, no pet.) (mem. op.) (concluding that the trial court's amended temporary injunction clarifying the term "contacting" constituted a second temporary injunction and, therefore, did not interfere with the appellate court's jurisdiction), *Ahmed v. Shimi Ventures*, 99 S.W.3d 682, 688-89 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (holding that an order modifying a temporary injunction, including adding a provision applicable to insurers, reducing bond, and changing some compliance dates, but not incorporating the original temporary injunction by reference was a complete temporary injunction in itself), and *Martin*, 640 S.W.2d at 355 (involving a modified temporary injunction increasing the bond amount in the original temporary injunction from $2,000 to $100,000) support its contention that in changing the date of the temporary injunction, the Hidalgo County district court made a substantive modification to the November 2, 2007 temporary injunction. We disagree.

None of the cases cited by Graybar address a situation where a trial court has

25

extended a temporary injunction. Furthermore, none of the cases cited by Graybar stand for the proposition that a mere changing of the date on the temporary injunction to effectuate an extension constitutes a substantive modification. Thus, the cases relied upon by Graybar are not persuasive in this matter.

Based on the foregoing, we conclude that the order falls outside the ambit of section 51.014(a)(4) of the civil practice and remedies code, and that we do not have jurisdiction to review it. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4). On June 10, 2008, Gonzalez and Laredo Hix moved to dismiss this appeal. Accordingly, we grant the motion to dismiss filed by Gonzalez and Laredo Hix, and we dismiss this interlocutory appeal.[16]

## V. CAUSE NUMBER 13-08-00333-CV

In a second petition for writ of mandamus, Graybar, MIRA, and Stallings assert that the trial court abused its discretion in denying their motions to transfer venue. Specifically, they argue that sections 15.011 and 15.012 of the civil practice and remedies code are mandatory venue provisions which necessitate trying the entire case in Webb County. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011, 15.012 (Vernon 2002). Gonzalez and Laredo Hix counter by arguing that: (1) the mandatory venue provisions noted by Graybar do not apply because venue in this case is governed by section 15.062 of the civil practice and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 15.062 (Vernon 2002); (2) Graybar and MIRA are barred from obtaining a writ of mandamus because of waiver; and (3) section 15.011 does not apply because the underlying suit does not involve the recovery of property or quieting title, *see id.* § 15.011.

---

[16] Given our disposition, we need not address Graybar's remaining issues in cause number 13-08-00341-CV. *See* TEX. R. APP. P. 47.1.

## A. Standard of Review

As previously stated, the general rule is that mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker*, 827 S.W.2d at 839. However, section 15.0642 of the civil practice and remedies code provides that "[a] party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter." TEX. CIV. PRAC. & REM. CODE ANN. § 15.0642 (Vernon 2002); *see id.* § 15.064 (Vernon 2002) ("No interlocutory appeal shall lie from the determination [of a motion to transfer venue]."). The Texas Supreme Court has held that parties bringing a mandamus under section 15.0642 to enforce the mandatory venue provisions of the civil practice and remedies code need not demonstrate that they lack an adequate remedy by appeal. *In re Mo. Pac. R.R.*, 998 S.W.2d 212, 215 (Tex. 1999) (orig. proceeding) (citing *In re Continental Airlines,* 988 S.W.2d at 735). Instead, the supreme court concluded that a party need only demonstrate that the trial court abused its discretion. *Id.* at 216. Therefore, Graybar has properly raised this issue in its second petition for writ of mandamus.

## B. Discussion

Rule 86 of the Texas Rules of Civil Procedure provides that "[a]n objection to improper venue is waived if not made by written motion filed prior to or concurrently with any other plea, pleading or motion except a special appearance motion . . . ." TEX. R. CIV. P. 86(1).

### 1. Graybar

Graybar was first joined as a party to this matter when Laredo Hix filed its original petition in intervention and Gonzalez filed his supplemental counterclaim on October 9, 2007. Graybar filed its motion to partially dissolve or modify the November 2, 2007

27

temporary injunction entered by the Hidalgo County trial court and its verified plea in abatement. Subsequently, on November 20, 2007, Graybar filed its motion to transfer venue and original answer subject thereto, contending that section 15.011 of the civil practice and remedies code mandated venue in Webb County. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. On March 19, 2008, Graybar filed a supplement to its November 20, 2007 motion to transfer venue, asserting that section 15.012 of the civil practice and remedies code also mandated venue in Webb County. *See id.* § 15.012; *cf. In re Pepsico, Inc.*, 87 S.W.3d 787, 794 (Tex. App.–Texarkana 2002, orig. proceeding) ("[A]n original timely motion to transfer venue may be amended to cure defects in the original motion if the amended motion is filed before the trial court rules on the original motion, and that the properly filed amended motion relates back to and supersedes the original motion to transfer venue."). Because Graybar filed its motion to dissolve or modify the temporary injunction and verified plea in abatement prior to its motion to transfer venue, we conclude that Graybar has waived this contention. *See* TEX. R. CIV. P. 86(1). Therefore, Graybar is not entitled to mandamus relief.

### 2. MIRA

In its motion to transfer venue filed on November 1, 2007, MIRA contended that Eastland County was the proper venue for this matter. At no point did MIRA allege that Webb County was the proper venue. Furthermore, MIRA did not make reference to either sections 15.011 or 15.012 of the civil practice and remedies code in arguing that venue was not proper in Hidalgo County. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011, 15.012. Because this petition for writ of mandamus specifically alleges that sections 15.011 and 15.012 mandate venue in Webb County and because MIRA did not plead those provisions in its motion to transfer venue and did not assert that venue should be in

Webb County, we conclude that MIRA has waived its venue contention. *See* TEX R. CIV. P. 86(3)(b) (providing that a motion to transfer venue must "state that the action should be transferred to another specified county of proper venue because . . . . Mandatory venue of the action in another county is prescribed by one or more specific statutory provisions *which shall be clearly designated or indicated*") (emphasis added); *Wilson v. Tex. Parks & Wildlife Dep't.*, 886 S.W.2d 259, 260-61 (Tex. 1994). Therefore, MIRA is not entitled to mandamus relief.

### 3. Stallings

Stallings filed its original motion to transfer venue on November 1, 2007, asserting that section 15.011 mandated venue in Webb County.[17] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. Stallings filed a first amended motion on November 1 2007, and a second amended motion on November 15, 2007.[18] *See In re Pepsico, Inc.*, 87 S.W.3d at 794. In its first amended motion to transfer venue, Stallings specifically denied Laredo Hix's and Gonzalez's venue facts suggesting that venue was proper in Hidalgo County, and it contended that section 15.012 also mandated venue in Webb County. *See id.* § 15.012. Stallings filed a motion requesting a hearing on its motion to transfer venue on November 1, 2007. *See* TEX. R. CIV. P. 87(1) (providing, among other things, that "[t]he movant has the duty to request a setting on the motion to transfer"). The Hidalgo County trial court denied all pending motions to transfer venue after a hearing on May 12, 2008.[19]

---

[17] The November 1, 2007 motion to transfer venue was the first pleading filed by Stallings in the trial court; therefore, we do not have for review any issues pertaining to the due order of pleading rule with respect to Stallings. *See* TEX. R. CIV. P. 86(1).

[18] In its second amended motion to transfer venue, Stallings made a convenience argument which was not briefed on appeal.

[19] The Hidalgo County trial court's order denying the motions to transfer venue includes a handwritten message stating that the hearing on the motions was held on February 12, 2008. However, the order denying the motions was signed and the reporter's record reflects that the hearing was conducted on May 12, 2008.

29

Stallings argues that sections 15.011 and 15.012 mandate venue in Webb County. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011, 15.012. We disagree.

Section 15.011 of the civil practice and remedies code provides that:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or a party of the property is located.

*Id.* § 15.011.[20] Additionally, section 15.012 of the civil practice and remedies code provides that "[a]ctions to stay proceedings in a suit shall be brought in the county in which the suit is pending." *Id.* § 15.012.

We are, however, persuaded by the reasoning in *Allison v. Fire Insurance Exchange*, 98 S.W.3d 227, 241-44 (Tex. App.–Austin 2002, pet. granted, judgm't vacated w.r.m.). In *Allison*, the Austin Court of Appeals analyzed the applicability of section 15.011 of the civil practice and remedies code in a case involving actions for negligence, negligence per se, breach of contract, deceptive trade practices, and breach of good faith and fair dealing in insurance claims handling pertaining to water damage and mold contamination of an entire house. *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.011. The *Allison* court stated the following:

> When considering venue, we note that the legislature's use of the word "shall" in a statute generally indicates the mandatory character of the provision. Because of the mandatory nature of section 15.011, we will strictly construe it and will not hold that it applies unless [appellant's] suit falls clearly within one of the categories in the section.

*Allison*, 98 S.W.3d at 241 (internal citations omitted).

---

[20] Section 15.011 of the civil practice and remedies code is a mandatory venue provision. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 119 (Tex. 2006) (orig. proceeding); *see also* TEX. R. CIV. P. 87(2).

Here, Stallings argues that the phrase "recovery of damages of real property" encompasses the claims made by Laredo Hix and Gonzales; therefore, venue is mandatory in Webb County. As the *Allison* court properly noted, "[i]f we were to look at the words 'recovery of damages to real property' in isolation, we would concede that the phrase may be sufficiently broad to encompass the expansive reading urged by [appellee]. But we do not construe statutory phrases in isolation; we read statutes as a whole." *Id.* at 243. Furthermore, we must look to the "true" nature of the action to determine whether section 15.011 applies. *Id.* (citing *Renwar Oil Corp. v. Lancaster*, 154 Tex. 311, 313, 276 S.W.2d 774, 775 (1955); *Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 371 (Tex. 2001)).

> Before the addition of the phrase "recovery of damages to real property," the venue provision applied only when the suit directly involved a question of title to land. *See, e.g., Yzaguirre*, 53 S.W.3d at 371 (mandatory venue provision does not apply because suit does not involve recovery of real property or quieting title); *Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 833 S.W.2d 736, 738 (Tex. App.–Houston [1st Dist.] 1992, writ denied); *Scarth v. First Bank & Trust Co.*, 711 S.W.2d 140, 141-42 (Tex. App.–Amarillo 1986, no writ). We have been cited to no authority that supports expanding the scope of the provision beyond questions relating to the recovery of real property or affecting title to "land." Except to make it explicit that the provision in question allows for the recovery of damages in such a suit relating to land, there is no indication that the legislature sought to broaden the provision with the addition of the phrase. That the phrase "for recovery of damages to real property" was sandwiched between "to remove encumbrances from the title" and "to quiet title" further bolsters our reading. Reading the relevant phrase in its entire context, then gives support for the more narrow interpretation. *See* 1 Scott Brister, et al., *Texas Pretrial Practice* § 9.34 (2000).

> Were we to interpret the provision to allow for mandatory venue in all instances in which any damages are sought relating to a dwelling, no matter the nature of the action, we believe we would be extending beyond permissible bounds the statute's language. . . . The phrase must be understood against the background of what the legislature was attempting to accomplish in restoring a damage provision to the section, thereby completing the availability of an array of remedies to actions involving "land."

*Id.*

31

Here, Laredo Hix and Gonzalez brought actions against Stallings for breach of contract and negligence in carrying out its duties in the construction of the Laredo Holiday Inn. Stallings has not cited to any authority expanding the scope of section 15.011 beyond questions relating to the recovery of real property or affecting title to "land." *See Trafalgar House Oil & Gas Inc. v. De Hinojosa*, 773 S.W.2d 797, 798 (Tex. App.–San Antonio 1989, no writ) (construing the identical statutory predecessor to section 15.011 and concluding that "[i]t is not enough that the suit merely involves land; it must be a suit for the recovery of land or damages thereto, or to quiet the title to land, or to prevent or stay waste on land.") (quoting *Canales v. Estate of Canales*, 683 S.W.2d 77, 81 (Tex. App.–San Antonio 1984, no writ)). Because Laredo Hix's and Gonzalez's claims do not involve recovering real property or quieting title or seeking damages for such loss, section 15.011 does not apply. *See Allison*, 98 S.W.3d at 244.

Moreover, section 15.012 does not apply because we have previously concluded that the Hidalgo County district court has dominant jurisdiction over this matter and that the court was authorized to issue an anti-suit injunction with respect to the pending Webb County claims in cause numbers 13-08-00294-CV and 13-08-00073-CV. *See Fleming v. Ahumada*, 193 S.W.3d 704, 711-12 (Tex. App.–Corpus Christi 2006, no pet.). Given that sections 15.011 and 15.012 do not apply in this case, we conclude that the trial court did not abuse its discretion in denying Stallings's motion to transfer venue. Accordingly, we deny Stallings's petition for writ of mandamus.

## VI. Conclusion

Accordingly, we affirm the trial court's judgment in cause number 13-08-00294-CV, deny Graybar's petition for writ of mandamus in cause number 13-08-00073-CV, dismiss Graybar's appeal in cause number 13-08-00341-CV, and deny Graybar's second petition

32

for writ of mandamus in cause number 13-08-00333-CV.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 26th day of August, 2008.